**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| WENDY SCHUCHMANN, | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:23-cv-1604 |
| | : | |
| v. | : | (JUDGE MANNION) |
| | : | |
| GREAT AMERICAN POWER, LLC, | : | |
| | : | |
| Defendant | : | |

## <u>MEMORANDUM</u>

Plaintiff Wendy Schuchmann brings this class action suit against Defendant Great American Power, LLC, claiming violations of the Telephone Consumer Protection Act. Defendant moves to dismiss or compel arbitration of Plaintiff's claims pursuant to an arbitration clause in its terms and conditions of service. Without conceding that she agreed to arbitrate in the first place, Plaintiff contends that the arbitration clause is unenforceable because she rescinded her contract with Defendant and that, in any event, it does not apply to her claim.

## I.    BACKGROUND

Plaintiff alleges that although she registered her phone number on the Federal Trade Commission's National Do Not Call Registry, she received

prerecorded calls from Defendant. (Doc. 1 ¶¶20, 23, 25). During one such call, in August 2020, she stayed on the line to speak with a Great American representative and agreed to enroll in its electricity services. (Doc. 18 at 4).[1] She was informed that she could rescind her enrollment within seven days of the date her confirmation letter was sent. (Id. at 4–5). Plaintiff avers that she did so, and thus never received Defendant's services. (Id. at 5). Despite her rescission and her instruction not to call anymore, she says, Defendant continued calling. (Doc. 1 ¶¶31–33).

The "Welcome Letter" sent by Defendant to Plaintiff[2] after her enrollment by phone includes the following clause, in bold:

> 30. Binding Arbitration: YOU AND GAP ARE AGREEING TO GIVE UP ANY RIGHTS TO LITIGATE CLAIMS IN A COURT OR BEFORE A JURY, OR TO PARTICIPATE IN A CLASS ACTION OR REPRESENTATIVE ACTION WITH RESPECT TO A CLAIM. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO BE UNAVAILABLE OR MAY BE LIMITED IN ARBITRATION.
>
> ANY CLAIM, DISPUTE OR CONTROVERSY (WHETHER IN CONTRACT, TORT OR OTHERWISE, WHETHER PRE-EXISTING, PRESENT OR FUTURE, AND INCLUDING STATUTORY, CONSUMER PROTECTION, COMMON LAW, INTENTIONAL TORT, INJUNCTIVE AND EQUITABLE

---

[1] She explains that she only enrolled in order to receive information proving that Defendant was responsible for the prerecorded calls. (Doc. 18 at 4).

[2] The letter is addressed to "Steven Spraks," [sic] (Doc. 18-4 at 1). Plaintiff notes that Steven Sparks is her ex-husband, (Doc. 18 at 4 n.2), and acknowledges that she received this letter. (Id. at 5; Doc. 18-1 ¶30).

CLAIMS) BETWEEN YOU AND US ARISING FROM OR
RELATING IN ANY WAY TO YOUR PURCHASE OF
PRODUCTS OR SERVICES, WILL BE RESOLVED
EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION.

(Doc. 18-4 at 6 ¶30).

## II.    LEGAL STANDARD

"For a court to compel arbitration, it initially must find that there is a
valid agreement to arbitrate because the basis for contractual arbitration is
consent, not coercion." *Century Indem. Co. v. Certain Underwriters at
Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009) (citing *Mastrobuono v. Shearson
Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995)). "Because an arbitrator's
authority derives solely from the parties' agreement to submit their disputes
to arbitration, a party cannot be compelled to submit a dispute to arbitration
unless it has agreed to do so." *Id.* at 524 (internal citations omitted). In
determining whether an agreement to arbitrate was entered, courts apply
"ordinary state-law principles that govern the formation of contracts." *Id.*
(quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

As for what standard of review is used to evaluate a motion to compel
arbitration, the Third Circuit has formulated the following approach.

[W]hen it is apparent, based on the face of a complaint, and
documents relied upon in the complaint, that certain of a party's
claims are subject to an enforceable arbitration clause, a motion
to compel arbitration should be considered under a [Federal]

Rule [of Civil Procedure] 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard. In the event that summary judgment is not warranted because the party opposing arbitration can demonstrate, by means of citations to the record, that there is a genuine dispute as to the enforceability of the arbitration clause, the court may then proceed summarily to a trial regarding the making of the arbitration agreement or the failure, neglect, or refusal to perform the same.

*Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotations omitted). In short: where arbitrability is not apparent or is placed in issue, "a 'restricted inquiry into factual issues' will be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate." *Id.* at 774 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983)).

According to their amended joint case management plan, the parties dispute "whether [Plaintiff] entered into an enforceable agreement to arbitrate TCPA claims with [Defendant]." (Doc. 27 ¶1.3). They "have exchanged informal discovery related to the issue of arbitrability," and Defendant is "amenable to discovery limited to [] the enforceability of the arbitration agreement." (Id. ¶4.1).

## III.   DISCUSSION

It is not apparent based on the face of the Complaint that Plaintiff's claims are subject to an arbitration clause, because the Complaint makes no mention of the clause.[3] In her brief in opposition and declaration attached thereto, Plaintiff does acknowledge that "she agreed to be enrolled." (Doc. 18 at 4; Doc. 18-1 ¶26).

But she does not concede that she agreed to arbitrate in the first place, (Doc. 18 at 8 ("GAP's motion focuses heavily on the *purported* formation of

---

[3] In relevant part, the Complaint alleges:

26. During the August 25, 2020 call, suspecting this was not her electric utility calling, Ms. Schuchmann stayed on the line in an effort to learn the identity of the party calling her unlawfully.

27. Ms. Schuchmann spoke with an agent who identified himself as "Blake", who she now knows was working for Great American Power.

28. Blake solicited Ms. Schuchmann to change her energy plan to one supplied by Great American.

29. Shortly thereafter, Great American sent Ms. Schuchmann correspondence in the mail.

30. Ms. Schuchmann called Great American and advised Great American that she did not wish to become a Great American customer.

(Doc. 1 ¶¶26–30).

a contract….") (emphasis added)).[4] And nowhere has Defendant shown that she did. *See Hutt v. Xpressbet*, *LLC*, 2020 WL 2793920, at *5 (E.D. Pa. 2020) ("Under Pennsylvania law, the party seeking arbitration bears 'the burden of demonstrating that a valid agreement to arbitrate exists between the parties.'" (quoting Goldstein *v. Depository Trust Co.*, 717 A.2d 1063, 1067 (Pa. Super. Ct. 1998))).

While Defendant asserts that during an August 25, 2020 call Plaintiff "undeniably agree[d] and consent[ed] to Great American's terms and conditions," (Doc. 7 at 3), the recording of that call reveals that Plaintiff was not told what those terms and conditions were. (Doc. 26).

Though during this call Plaintiff agreed to enroll in Defendant's electricity services, there was no discussion of an arbitration agreement.

---

[4] The court notes that in her brief Plaintiff states that on August 25, 2020 she "accepted GAP's terms and conditions which came with the assurance the contract could be rescinded within seven days of mailing the enrollment letter." (Doc. 18 at 9). However, when read in context with the recently filed Amended Case Management's averment that the parties dispute "[w]hether Schuchman entered into an enforceable agreement to arbitrate TCPA claims with Great American Power," (Doc. 17 ¶1.3), this statement presumably was only intended to concede that Plaintiff agreed to the terms regarding rescission (which was explained during the phone call), not to each term set forth in the Welcome Letter (which were not explained during the call). At any rate, a concession that she agreed to "terms and conditions" over the phone which were not discussed in any detail would not satisfy the court that there was a meeting of the minds as to the arbitration clause during the call.

Defendant's representative only mentioned the company's terms and conditions of service generally. The following exchange occurred:

> **Defendant's Representative**: And finally, Great American Power will send you a welcome package in the next business day which will include your full terms and conditions. By enrolling in this program you accept and acknowledge the receipt of Great American Power's terms and conditions of service. Is this your understanding?
> **Plaintiff**: Yes.

(Doc. 26 / Ex. 1 at 8:45–9:04).

Both parties rely on Pennsylvania contract law, under which an enforceable contract requires "a meeting of the minds." *Chilutti v. Uber Techs., Inc.*, 300 A.3d 430, 443 (Pa. Super. Ct. 2023). "[T]he very essence of an agreement is that the parties mutually assent to the same thing." *Id.* Parties to an enforceable contract must also "delineate the terms of their bargain with sufficient clarity." *Helpin v. Trustees of Univ. of Pa.*, 969 A.2d 601, 611 (Pa. Super. Ct. 2009). "The Pennsylvania Supreme Court has held that an agreement to arbitrate must be 'clear and unmistakable' and cannot arise 'by implication.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) (quoting *Emmaus Mun. Auth. v. Eltz*, 204 A.2d 926, 927 (Pa. 1964)).

The August 25, 2020 call did not constitute a meeting of the minds as to Great American's terms and conditions, and did not delineate them with

any clarity, because Plaintiff did not receive those terms and conditions until after the call. Without any discussion or presentation of the arbitration clause, there could have been no meeting of the minds during which Plaintiff agreed to arbitrate.

For example, in *Quiles v. Fin. Exch. Co.*, 879 A.2d 281, 283 (Super. Ct. Pa. 2005), the plaintiff brought a defamation action against the defendant, her employer. The defendant petitioned to compel arbitration pursuant to arbitration provisions contained in its employee handbook. *Id.* Though she had signed a form acknowledging that she had received and read the handbook, the plaintiff testified (and the trial court found) that she had in fact never received the handbook. *Id.* at 283–84. The Superior Court upheld the denial of the petition to compel arbitration because the plaintiff "could not validly agree to arbitrate her claims without first having been given a copy of the Handbook, the only document that detailed and explained … the company's proposed arbitration process." *Id.* at 288. "In essence, the terms of the process were never fully communicated to her." *Id.*

Similarly, a motion to compel arbitration was denied in *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 166 (3d Cir. 2009) (applying Pennsylvania law). The plaintiff there, a shareholder/director of the defendant law firm, filed civil rights complaints against the firm. *Id.* at 158.

The firm moved to compel arbitration of her claims pursuant to an arbitration provision in its bylaws. *Id.* at 159. But the plaintiff swore that (and the firm did not dispute that) she had never been provided a copy of the bylaws, had never been informed of the arbitration provision, and had never signed any agreement incorporating the arbitration provision. *Id.* In affirming the denial of the firm's motion to compel, the Third Circuit reasoned that without having received a copy of the bylaws, the plaintiff "could not have explicitly agreed to arbitrate her claims." *Id.* at 165; *see also id.* at 164 ("Pennsylvania law requires arbitration agreements to be explicit.").

The record as developed so far does not indicate that Plaintiff had been informed of the arbitration clause when she enrolled during the August 25th call. So like the plaintiffs in *Quiles* and *Kirleis*, she could not have then explicitly agreed to that clause.

Defendant also asserts that Plaintiff was presented the arbitration clause by means of its availability on Defendant's website. (Doc. 7 at 9; Doc. 7-1 at 3). *See Fixed Plan Disclosure Statement and Terms of Service*, Great Am. Power, https://products.greatamericanpower.com/documents/WEB%20PA%20-%20Fixed%20Terms%20of%20Service%20Elec.pdf).[5]

---

[5]    Defendant's declaration includes a link to products.greatamericanpower.com. The court observes that this page

*(footnote continued on next page)*

Although this term sheet is not identical to the Welcome Letter's in all respects, it does contain the same arbitration clause.  For its argument that the clause's website presence was sufficient, Defendant relies on *Schwartz v. Comcast Corp.*, 256 Fed. App'x 515 (3d Cir. 2007) (non-precedential). There, the Third Circuit reasoned that the plaintiff (who by the time of his complaint had subscribed to the defendant's services for more than eighteen months)[6] was bound to an arbitration clause contained in the defendant's Subscriber Agreement where the defendant "had demonstrated that [the plaintiff] was aware of a subscription agreement, which included an arbitration clause." *Id.* at 520. Because there was no genuine dispute that the plaintiff was aware of the subscription agreement, and because its terms "were available to [the plaintiff] at all times because the Agreement was

---

directs a user to enter their Zip Code to "find products." Upon entering a zip code and clicking "find products," a user is presented with "Fixed Plans" of various terms. After a plan is selected, the user is prompted to fill out an enrollment form. At the end of this form is a box including the following statement: "I have reviewed and agree with the following legal disclaimers and documents: Terms & Conditions, Contract Summary." "Terms & Conditions" is hyperlinked to a pdf entitled "Fixed Plan Disclosure Statement and Terms of Service." *See* https://products.greatamericanpower.com /documents/WEB%20PA%20-%20Fixed%20Terms%20of%20Service%20 Elec.pdf.

 [6] *See Schwartz v. Comcast Corp.*, 2006 WL 3251092, at *1 (E.D. Pa. 2006).

- 10 -

Case 3:23-cv-01604-MEM   Document 30   Filed 01/19/24   Page 11 of 14

posted on [the defendant's] web site," the court concluded that "there was a valid agreement to arbitrate." *Id.*

Also apposite is *Lewandowski v. Megabus USA, LLC*, 613 F. Supp. 3d 909, 910 (W.D. Pa. 2020), in which the defendant moved to compel arbitration pursuant to an arbitration clause in its Terms & Conditions. The plaintiff there had purchased the defendant's bus services on multiple occasions over the phone, and during each call she was informed that her ticket "may be subject to applicable terms" and that she could look at the defendant's website for the full terms. *Id.* at 911. She averred that she had never accessed the website nor otherwise been presented the Terms and Conditions. *Id.* at 912. The court held that "there was no explicit agreement to arbitrate." *Id.* at 915 ("Plaintiff cannot be bound by an arbitration clause that was only available for review on a separate medium where the transaction could be completed without requiring her to acknowledge review of the clause and express assent to its terms.").[7]

The court concludes that the arbitration clause's presence on Defendant's website is insufficient to establish a clear and unmistakable

---

[7] The *Lewandowski* court considered *Schwartz* distinguishable because "the key to its determination was that the record showed that the plaintiff had received actual notice of the subscription agreement (a physical copy) upon subscribing." 613 F. Supp. 3d at 915.

- 11 -

agreement to arbitrate. Unlike in *Schwartz*, the record here lacks evidence that Plaintiff had been put on notice of or given the opportunity to review the arbitration clause *and then* demonstrated her assent to it. And like *Lewandowski*, the parties' agreement here occurred over the phone with no delineation of the terms which included the arbitration clause. There is no indication that Plaintiff had been put on notice of the arbitration clause, or even advised of where she could review it (as the *Lewandowski* plaintiff was), when she agreed to enroll. Though during the call she confirmed an understanding that by enrolling she would "accept and acknowledge the receipt of Great American Power's terms and conditions of service," she could not have then actually agreed to arbitrate without any awareness of, or at least opportunity to review, the arbitration clause.

Plaintiff also challenges the enforceability of the arbitration clause on the ground that she rescinded whatever agreement she had entered. (Doc. 18 at 8–13). She supports this rescission with her own declaration that she called her utility company and cancelled her enrollment with Defendant on September 1, 2020. (Doc. 18-1 ¶31). Defendant contends that Plaintiff did not rescind the agreement; that, in any event, rescission is a question for an arbitrator; and that even if she did rescind the agreement, the arbitration clause would still be enforceable. (Doc. 25 at 2–5). The parties also dispute

whether Plaintiff's claims would fall within the scope of the arbitration clause. (Doc. 18 at 11–14; Doc. 25 at 6).

The court need not address the effect of Plaintiff's alleged rescission or the scope of the arbitration clause, because a valid agreement to arbitrate has not been shown. For purposes of the instant motion, it suffices to say that the current record is not conclusive as to an agreement to arbitrate. So "the motion to compel arbitration must be denied pending further development of the factual record." *Guidotti*, 716 F.3d at 775.  In accordance with *Guidotti*, Defendant's motion to compel will be denied without prejudice to afford it the option of filing a renewed motion if further discovery reveals that there is no genuine dispute of material fact as to the existence of a valid agreement to arbitrate.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss or in the alternative to stay proceedings and compel arbitration will be denied without

prejudice. Further discovery on the issue of arbitrability will be allowed. An appropriate order will issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: January 19, 2024**
23-1604-01

- 14 -